# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LETICIA M. GROSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No: 02 C 5064 |
| ) | |
| OFFICE OF THE SECRETARY OF ) | Judge John W. Darrah |
| STATE OF ILLINOIS, ) | |
| JESSE WHITE, THOMAS BENIGNO, ) | |
| GARY LAZZERINI, TINA PROSE, and ) | |
| JEANINE STROGER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Leticia Gross, filed suit against Defendants, the Office of the Secretary of State of Illinois, Jesse White, Thomas Benigno, Gary Lazzerini, Tina Prose, and Jeanine Stroger. Plaintiff alleges that Defendants: (1) retaliated against Plaintiff for filing a sexual harassment complaint, in violation of Title VII; (2) retaliated against Plaintiff because of her political affiliation, in violation of 42 U.S.C. § 1983; and (3) contributed to a hostile work environment, in violation of Title VII. Presently before the Court is Defendants' Motion for Summary Judgment. For the following reasons, that motion is granted.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually

unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts, for the purposes of this motion, taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def's 56.1") and exhibits, are as follows.

Plaintiff was employed at the Executive Office at the Secretary of State during the administration of George Ryan. Pl.'s 56.1 ¶ 6. Plaintiff was actively involved with Ryan's political campaigns for public office. Pl.'s 56.1 ¶ 11. Plaintiff also ran for State Representative as a republican. Pl.'s 56.1 ¶ 11.

Plaintiff performed work for investigators, such as completing investigation paperwork to help automobile dealers obtain dealer's licenses. Pl.'s 56.1 ¶ 9. However, after Jesse White was elected to replace Ryan as Secretary of State in 1999, Plaintiff was transferred from the Executive Office to the Central Facility. Pl.'s 56.1 ¶¶ 11, 35. At the Central Facility, Plaintiff held a clerk position, which consisted of issuing driver's licenses. Pl.'s 56.1 ¶ 38. In late 2000 and early 2001, Plaintiff was promised by Lenny Gutierrez to become manager of a new facility. Pl.'s 56.1 ¶ 56.

Instead, Plaintiff was transferred to the Chicago Public Service Center, where she had receptionist duties. Pl.'s 56.1 ¶¶ 62, 66. Nickolas Torres worked with Plaintiff at the Chicago Public Service Center. Defs.' 56.1 ¶ 33. Torres did not have the authority to discipline, hire, fire, demote, or transfer any employee. Defs.' 56.1 ¶ 35. Torres engaged in acts of sexual conduct towards Plaintiff. Defs.' 56.1 ¶ 36.

After Plaintiff first complained of this sexual harassment, she was transferred to another facility to separate Plaintiff and Torres. Defs.' 56.1 ¶ 40. Plaintiff also reported her sexual harassment claim to the Inspector General's Office at the Secretary of State. Defs.' 56.1 ¶ 42.

The day after Plaintiff raised her complaint, she received a reprimand in a written letter from an Inspector General's investigation concerning computer access. Pl.'s Ex. 10, Oct. 2, 2001 Inspector General's report. The investigation was completed three months earlier, and compiling

the report was supposed to be quick and simple. Pl.'s 56.1 ¶¶ 133-134. The report, however, did not recommend any discipline for Plaintiff. Pl.'s Ex. 10, Oct. 2, 2001 Inspector General's report.

Based on Plaintiff's sexual harassment complaints, two investigations were conducted: one by Corney Morgan, an investigator with the Inspector General; and a second by Jeanine Stroger, the Equal Employment Opportunity officer for the Secretary of State's Office. Defs.' 56.1 ¶ 43, 52-70, 9. As part of their investigations, Morgan and Stroger both saw a memorandum authored by Lynn Lindemann in which another employee stated that "[y]ou know those girls – i e [sic] Susan [Ordonez-Garcia] and Sonja [Cortez]. The [sic] bared their breasts at the other [Central] office." Pl.'s 56.1 ¶¶ 130, 146, 157; Pl.'s Ex. 14..

Morgan met with Plaintiff, who told Morgan about Torres's conduct. Pl.'s 56.1 ¶ 44. Morgan also met with Ordonez-Garcia and Cortez, who both stated that Plaintiff engaged in acts of sexual conduct with Torres. Pl.'s 56.1 ¶ 47; Pl.'s Ex. 15, Morgan summary at 2. Torres also admitted to engaging in acts of sexual conduct with Plaintiff. Pl.'s Ex. 15, Morgan summary at 3. Morgan did not ask specific questions about any harassing conduct involving Torres. Pl.'s 56.1 ¶ 147. Morgan also did not ask any questions concerning the Lindemann memorandum because he was only focused on Plaintiff's investigation. Defs.' Ex. 29, Morgan Dep. at 49. Morgan concluded that Plaintiff did not suffer any sexual harassment but that Plaintiff and Torres were both engaged in gross misconduct. Defs. 56.1 ¶ 51.

Stroger met with Plaintiff concerning Torres's misconduct. Defs.' 56.1 ¶¶ 53-54. Stroger also met with Ordonez-Garcia, Cortez, and Guy Tallas, who all stated that Plaintiff engaged in acts of sexual conduct with Torres. Defs.' 56.1 ¶¶ 57, 58, 64. Torres also admitted to engaging

4

in acts of sexual conduct with Plaintiff. Defs.' 56.1 ¶ 65. Further, other employees interviewed by Stroger stated that Plaintiff and Torres were engaged in a consensual relationship. Pl.'s Ex. 19, Stroger Report. Stroger did not ask any specific questions concerning any harassing conduct involving Torres but, rather, asked open-ended questions concerning harassment in general. Defs.' Ex. 31, Stroger Dep. at 16-20. Some employees responded and discussed other acts of possible misconduct that did not involve Plaintiff and Torres. Defs.' Ex. 31, Stroger Dep. at 19-20. Stroger concluded that Torres did not sexually harass Plaintiff because Plaintiff and Torres appeared to have a consensual relationship. Defs.' 56.1 ¶ 67. Stroger recommended discipline for both Plaintiff and Torres. Defs.' 56.1 ¶ 70.

The Secretary of State's Office has a zero-tolerance against sexual harassment and a separate policy against disorderly conduct on State property which impedes work; both policies provide discharge as a remedy for infractions. Defs.' 56.1 ¶ 18, 22. Any employee harassed "shall immediately report the incident to the employee's supervisor." Defs.' 56.1 ¶ 19. If an employee is not comfortable discussing the harassment with her supervisor, the employee could file a report with her department director, the Equal Employment Opportunity Officer, the Director of the Department of Personnel, or the Inspector General. Defs.' 56.1 ¶ 20. Plaintiff received both policies. Defs.' 56.1 ¶¶ 23-24.

Based on these investigations and the policy against misconduct, it was recommended that both Plaintiff and Torres be discharged. Defs.' 56.1 ¶ 71; Pl.'s Ex. 23. This request was approved and was forwarded to the Director of Personnel. Defs.' 56.1 ¶ 73-74; Defs.' Ex. 4. Thereafter, Plaintiff was interviewed concerning the findings of the investigations. Defs.' 56.1 ¶ 76; Defs.' Ex. 21. The proposed terminations were then forwarded for higher-level approval.

Defs.' 56.1 ¶ 81; Defs.' Ex. 22. Plaintiff and Torres were suspended pending discharge. Defs.' 56.1 ¶ 83; Defs.' Ex. 7A. Subsequently, Plaintiff and Torres were discharged for cause. Defs.' 56.1 ¶ 85; Defs.' Ex. 7C. The documents detailing Plaintiff's discharge only discussed her sexual misconduct. Pl.'s Ex. 23; Defs.' Exs. 4, 21, 22, 7A, 7C.

## ANALYSIS

### *Title VII Retaliation*

Under Title VII, retaliation occurs when an employer takes an adverse action against an employee for engaging in protected conduct, such as reporting sexual harassment. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (*Rogers*). Plaintiff may avoid summary judgment on her Title VII retaliation claim through either the direct method or the indirect "burden-shifting" method. *Rogers*, 320 F.3d at 753.

Circumstantial evidence consists of: "(1) suspicious timing, ambiguous statements, behavior towards other employees and so on; [and] (2) evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently . . . ." *Volovsek v. Wisconsin Dep't of Agric., Trade, and Consumer Prot.*, 344 F.3d 680, 689 (7th Cir. 2003) (*Volovsek*). The evidence must create a convincing mosaic of retaliation to avoid summary judgment. *Volovsek*, 344 F.3d at 690.

Plaintiff presents circumstantial evidence consisting of: (1) a memorandum authored by Lindemann stating that Ordonez-Garcia and Cortez bared their breasts at the Central facility, (2) Defendants' failure to investigate the allegations in the Lindemann memorandum, (3) a reprimand Plaintiff received concerning computer use the day after she complained of

6

harassment, (4) Plaintiff's supervisor's repeated decisions to discipline Plaintiff for tardiness, (5) the investigator's failure to ask direct questions concerning Torres's conduct, and (6) the overall bias of the investigation against Plaintiff.

Plaintiff first contends the investigations were highly suspicious because Ordonez-Garcia and Cortez lied to the investigators to deflect blame from the allegations contained in the Lindemann memorandum. It is undisputed, though, that Ordonez-Garcia and Cortez were not the only employees who observed Plaintiff engaging in inappropriate conduct with Torres.

Plaintiff also claims that Defendants failed to investigate the allegations in the Lindemann memorandum relating to similarly situated employees despite Defendants' knowledge of the allegations contained therein. However, Plaintiff has failed to demonstrate that a genuine issue of material fact exists as to whether Ordonez-Garcia or Cortez were similarly situated employees.

For Plaintiff to demonstrate that Ordonez-Garcia and Cortez were similarly situated, each employee must have "dealt with the same supervisor, [been] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [her] conduct or [her] employer's treatment." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002). Plaintiff has not presented any affidavits, depositions, answers to interrogatories, or admissions demonstrating that Ordonez-Garcia and Cortez had the same supervisor as Plaintiff. Moreover, the alleged similar conduct committed by Ordonez-Garcia and Cortez is materially different. Their alleged misconduct occurred only at the Central Facility, while the allegations against Plaintiff involved conduct at the Chicago Public Service Center.

Furthermore, Plaintiff's only proof that Ordonez-Garcia and Cortez engaged in similar sexual misconduct is the Lindemann memorandum. While that memorandum may be used to demonstrate the investigators knew about the sexual misconduct allegation contained therein, it cannot be used to demonstrate that Ordonez-Garcia and Cortez engaged in such misconduct which would require an investigation. The key statement in the letter provides that another employee stated that "[y]ou know those girls – i e [sic] Susan [Ordonez-Garcia] and Sonja [Cortez]. The [sic] bared their breasts at the other [Central] office." Evidence presented to defeat a summary judgment motion must be admissible in content. *Juarez v. Menard, Inc.*, 366 F.3d 479, 484 n.4 (7th Cir. 2004). The key statement is hearsay with no exception readily apparent.

Plaintiff next argues that Defendants' desire to retaliate against Plaintiff is demonstrated by (1) the timing of the reprimand concerning computer access and (2) the repeated decisions to discipline Plaintiff for her tardiness. However, it is undisputed that none of the documents concerning Plaintiff's termination reference the computer access report or Plaintiff's tardiness. Plaintiff has not presented any affidavits, depositions, answers to interrogatories, or admissions to the contrary. Because these documents played no role in Plaintiff's termination, a jury could not infer that Defendants retaliated against Plaintiff through this evidence. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 548 n.11 (7th Cir. 2002).

Plaintiff further contends the investigations were faulty because the investigators chose to ask general questions about misconduct, instead of specific questions about Torres's conduct. However, it is undisputed that Torres admitted his misconduct to one of the investigators; and he was subsequently terminated, thus making any failure to ask specific questions about Torres's

conduct harmless. Plaintiff's issue in this regard is not that the investigation was inadequate but, rather, that the investigation discovered acts of sexual conduct committed by Plaintiff upon which Defendants acted.

Lastly, Plaintiff argues that the investigations demonstrate bias against Plaintiff. She contends that the investigators knew the interviewed employees were not credible and disliked Plaintiff. Plaintiff also contends that Defendants' final interview with Plaintiff, when supervisors asked Plaintiff questions about her alleged sexual conduct, was a cover-up for the biased investigation. Plaintiff, in essence, contends that Defendants chose to believe other versions of the events instead of Plaintiff's version. However, Plaintiff cannot avoid summary judgment merely by attacking her employer's determination regarding the credibility of the various persons involved. The employer's decision in this regard need not be correct, so long as it was honest and genuine. *See Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 398 (7th Cir. 1998). Moreover, Plaintiff has not presented any affidavits, depositions, answers to interrogatories, or admissions to support her contention that every employee interviewed by the investigators was biased against Plaintiff.

Based on the above, no genuine issue of material fact exists as to whether Plaintiff failed to present a convincing mosaic of circumstantial evidence of Defendants' retaliation.

Under the indirect method, Plaintiff must first prove a *prima facie* case of retaliation by demonstrating that (1) after lodging her complaint (2) only she, and not any other similarly situated employee who did not complain (3) was subjected to an adverse employment action (4) even though Plaintiff was performing her job in a satisfactory manner. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 642 (7th Cir. 2002) (*Stone*). The employer

9

may then produce a legitimate, non-discriminatory reason for taking the adverse employment action. *Stone*, 281 F.3d at 642-43. Plaintiff may then rebut this legitimate, non-discriminatory reason by demonstrating that motive was pretextual. *Stone*, 281 F.3d at 643.

Plaintiff argues that Ordonez-Garcia and Cortez are similarly situated, as all three employees allegedly committed inappropriate sexual conduct in the workplace. As discussed above, Ordonez-Garcia and Cortez were not similarly situated to Plaintiff.

Even if Plaintiff proved a *prima facie* case for the purposes of summary judgment, Defendants have presented a legitimate, non-discriminatory reason for Plaintiff's discharge – Plaintiff's sexual conduct. Plaintiff may establish this reason is pretextual through evidence demonstrating the employer's reason for termination was: (1) more likely than not motivated by a retaliatory motive or (2) not credible because the reason is factually baseless, not the actual motivation for the discharge, or insufficient to motivate the termination. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999). In this case, Plaintiff's evidence of pretext is identical to the circumstantial evidence of discrimination that was considered above. As such, no genuine issue of material fact exists as to whether Plaintiff has failed to demonstrate Defendants' reason for terminating Plaintiff was pretextual. Rather, the evidence in this regard is to the contrary and supports the Defendants' stated reasons.

*Section 1983 Retaliation*

Under 42 U.S.C. § 1983, retaliatory actions taken against a public employee because of the employee's political affiliation are actionable if: (1) the speech is a matter of public concern, (2) the speech was a substantial or motivating factor in the retaliatory action, and (3) the action would not have been taken in the absence of the employee's protected speech. *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004).

With respect to Plaintiff's termination, her political affiliation could not have been a motivating factor. It is undisputed that White took office in 1999, but Plaintiff was not terminated until 2002. A time gap of three years between the action precipitating the retaliation and the ultimate adverse action demonstrates the political affiliation was not a substantial factor in the termination. *See Hull*, 371 F.3d at 943; *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998). Furthermore, it is undisputed that the termination would have occurred even in the absence of Plaintiff's political affiliation; as discussed above, Defendants' legitimate reason for terminating Plaintiff was not pretexual.

Plaintiff also contends she suffered a demotion, was denied a promised promotion, and was subject to increased work scrutiny, all based upon her political affiliation, after Jesse White was elected Secretary of State in 1999. However, Plaintiff's initial demotion occurred in 1999, when White was elected to office. At this point, Plaintiff should have known circumstances existed which may have violated her constitutional rights. *See Mitchell v. Donchin*, 286 F.3d 447, 450 (7th Cir.2002). Plaintiff then had two years to file her action. *Mitchell*, 286 F.3d at 450 n.1. Plaintiff did not file her Equal Employment Opportunity Commission charge or her

complaint in federal court until 2002. Accordingly, no genuine issue of material fact exists as to whether these alleged adverse employment actions are time barred.

*Hostile Work Environment*

For Plaintiff to prevail on her hostile work environment claim, she must demonstrate: (1) she was subjected to unwelcome sexual conduct, (2) the conduct was severe or pervasive enough to create a hostile work environment, (3) the conduct was directed at her because of her gender, and (4) a basis for employer liability exists. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002) (*Hall*). If the harassing employee is a co-worker, as opposed to a supervisor, the employer can only be held liable if it has notice of the harassment or was negligent in discovering the harassment. *Hall*, 276 F.3d at 356. A supervisor has the power to directly affect the terms and conditions of the victim's employment. *Hall*, 276 F.3d at 355. The employer can designate a "point person" or multiple sources to accept complaints. *Hall*, 276 F.3d at 356; *see also Parkins v. Civil Constructors*, 163 F.3d 1027, 1036 (7th Cir. 1998). Furthermore, if the harassing employee is a co-worker, the employer is only liable "if it negligently failed to take steps to remedy the illegal harassment." *Longstreet v. Illinois Dep't of Corrections*, 276 F.3d 379, 381 (7th Cir. 2002).

Here, it is undisputed that Torres did not have the authority to discipline, hire, fire, demote, or transfer any employee; therefore, Torres was not Plaintiff's supervisor. Moreover, it is undisputed that Defendants took steps to remedy the harassment by transferring Plaintiff to another facility to separate her from Torres.

Plaintiff argues that Defendants were negligent in discovering and remedying the harassment. According to Plaintiff, her supervisor put off Plaintiff's efforts to report Torres's

12

conduct. However, it is undisputed that Defendants' policy provided that Plaintiff could present her charges to several "point persons" and that Plaintiff received notice of this policy. Plaintiff also contends that instead of investigating the claims, Defendants fabricated grounds for discharging Plaintiff. As discussed above, there is no evidence that the investigation conducted by Defendants was not done properly. Accordingly, Defendants are granted summary judgment as to Plaintiff's hostile work environment claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

Dated: March 03, 2005

JOHN W. DARRAH
United States District Judge